USCA1 Opinion

 

 December 22, 1992 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ ____________________ No. 92-1050 No. 92-1050 GEORGE E. MERCIER AND SUSAN Y. MERCIER, GEORGE E. MERCIER AND SUSAN Y. MERCIER, Plaintiffs, Appellants, Plaintiffs, Appellants, v. v. SHERATON INTERNATIONAL, INC., a/k/a SHERATON INTERNATIONAL, INC., a/k/a ITT-SHERATON INTERNATIONAL, INC., ITT-SHERATON INTERNATIONAL, INC., Defendant, Appellee. Defendant, Appellee. ____________________ ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ ____________________ Before Before Breyer, Chief Judge, Breyer, Chief Judge, ___________ O'Scannlain,* Circuit Judge, O'Scannlain,* Circuit Judge, _____________ and Cyr, Circuit Judge. and Cyr, Circuit Judge. _____________ ____________________ ____________________ James M. Hartman with whom Mary Ann Snyder and Harris, Beach & James M. Hartman with whom Mary Ann Snyder and Harris, Beach & _________________ _______________ ________________ Wilcox were on brief for appellants. Wilcox were on brief for appellants. ______ David S. Mortensen with whom Lydia J. Luz and Tedeschi, Grasso & David S. Mortensen with whom Lydia J. Luz and Tedeschi, Grasso & __________________ _____________ __________________ Mortensen were on brief for appellee. Mortensen were on brief for appellee. _________ ____________________ ____________________ ____________________ ____________________ *Of the Ninth Circuit, sitting by designation. *Of the Ninth Circuit, sitting by designation. CYR, Circuit Judge. Susan and George Mercier sued CYR, Circuit Judge. _____________ Sheraton International, Inc. ["Sheraton"] for breach of contract and intentional interference with contractual relations in connection with an alleged agreement to establish and operate a gambling casino at the Istanbul Sheraton Hotel. Sheraton moved for dismissal on the ground of forum non conveniens, asserting that Turkey is the more appropriate forum. The district court ordered dismissal. Mercier v. Sheraton Int'l, Inc., 744 F. Supp. _______ ____________________ 380 (1990) ["Mercier I"]. On appeal, we concluded that several _________ factors relevant to the forum selection inquiry had been misapplied. Mercier v. Sheraton Int'l, Inc., 935 F.2d 419 (1st _______ ____________________ Cir. 1991) ["Mercier II"]. On remand, the district court again __________ ordered dismissal, imposing several conditions designed to ensure the availability of an adequate forum in Turkey. I I BACKGROUND BACKGROUND __________ In approximately 1982, George Bauer, general manager of the Istanbul Sheraton Hotel, began negotiations with Susan Mercier for the establishment and operation of a gambling casino in the hotel. At the time, Mercier, an American citizen, was operating a cruise ship casino. As foreigners doing business in Turkey were required to have Turkish partners, Bauer introduced Mercier to Fethi Deliveli, a Turkish national. Ultimately, Mercier and her father, George Mercier, formed a partnership with Deliveli and became stockholders in Lidya Turistik Tesisler Isletmesi ["Lidya"], a Deliveli family corporation from which the Merciers acquired the right to operate the proposed casino at the Istanbul Sheraton. The casino negotiations continued throughout 1982 and 1983, eventually resulting in the execution of an undated Memorandum of Understanding among Bauer, Deliveli and the Merciers, whereby the Merciers and Deliveli would rent casino space in the Istanbul Sheraton. The agreement was made subject to the partners' procurement of all necessary permits from the Turkish government by the Merciers, and to the approval of Sheraton Corporation, Sheraton's Boston-based parent. Sheraton asserts that the Turkish permits were never obtained and that the approval of its parent corporation was never given; the Merciers disagree. In March 1984, Bauer and Deliveli (representing Lidya) signed a Protocol entitling Lidya to install slot machines in the Sheraton casino space. The Protocol was conditioned on the Merciers' participation in Lidya and on the approval of gambling by the Turkish "owning corporation" from which the hotel premises were leased by Sheraton. The Protocol prescribed that its interpretation would be "governed by Turkish laws," and designated Istanbul as the proper forum for the litigation of disputes arising thereunder. Sheraton now contends that the Protocol was intended to supersede the earlier Memorandum of Understanding, and that the Protocol never went into effect because it was never approved by the Turkish "owning 4 corporation." Sometime during the summer of 1986, following the collapse of the Mercier-Deliveli partnership, the Merciers reconveyed their Lidya shares to Deliveli in return for 101 slot machines and accession to the rights of Lidya and Deliveli under their various agreements with Sheraton. The Merciers then began negotiations with Leisure Investments, P.L.C. ["Leisure"], with a view to forming a new partnership to operate the casino. At about this time, Susan Mercier left Turkey in the aftermath of an altercation with a Turkish national which eventually led to the issuance of a warrant for her arrest. Leisure broke off negotia- tions with the Merciers and, in October 1987, Leisure's wholly- owned subsidiary made a separate agreement with Sheraton, pursuant to which the Leisure subsidiary commenced casino opera- tions at the Istanbul Sheraton in 1988. II II PRIOR PROCEEDINGS PRIOR PROCEEDINGS _________________ The Merciers filed the present action against Sheraton in the United States Court for the District of Massachusetts.1 Sheraton answered and moved to dismiss on the ground of forum non conveniens, contending that the Republic of Turkey was the proper ____________________ 1Their earlier lawsuit against Sheraton in the Western District of New York was dismissed because it mistakenly named Sheraton Corporation as defendant. Sheraton (a subsidiary of ___________ Sheraton Corporation), headquartered in Boston with most of its operations overseas, was not subject to the jurisdiction of the New York court. 5 forum. In Mercier I, the district court concluded, based on the _________ affidavit of Dr. Yucel Sayman, a Turkish law professor and attorney, that the Merciers would be able to raise their claims in the Turkish courts and that despite Susan Mercier's legal entanglements Turkey would provide an "adequate available forum." 744 F. Supp. at 384-85. The court further found that various "public interest" factors militated in favor of a Turkish forum, including the difficulty of applying Turkish law, the relative paucity of ties between the parties' dispute and the Commonwealth of Massachusetts, and the congestion in the federal district court docket. Id. at 386. ___ In Mercier II, we concluded that the Sayman affidavit ___________ was too incomplete and conclusory to meet Sheraton's burden of proving that the Turkish courts were an available "alternative forum" for the Mercier claims, 935 F.2d at 425-26 and n.7. Moreover, assuming Turkey's availability as an alternative forum, ____________ we concluded that the adequacy of the Turkish forum had not been ________ demonstrated, in that (1) the Merciers' tort claims might be time-barred under Turkey's one-year statute of limitations; and (2) Susan Mercier's testimony which the district court considered "essential" might not be received. Id. at 426. ___ Finally, we noted several deficiencies in the district court's forum selection analysis. We noted in particular the apparent failure to compare the docket congestion in Turkey with the _______ docket congestion in the forum and the failure to consider the potential interests of the United States, as well as the District 6 of Massachusetts, in affording a forum for the litigation. See ___ generally id. at 427-430. _________ ___ We did not suggest that dismissal was foreclosed on remand, see id. at 430, but rather that the forum determination ___ ___ should be made only after further findings of fact. See ___ generally Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1552 (5th _________ _____ ____________________ Cir.), cert. denied, 112 S.Ct. 430 (1991) (citing In re Air Crash _____ ______ _______________ Disaster Near New Orleans, Louisiana, 821 F.2d 1147, 1166 n.32 ______________________________________ (5th Cir. 1987) (en banc)) (where district court sets forth insufficient facts in support of its forum determination, appellate court should not address the issue, but remand to district court to "begin afresh"); accord, Lacey v. Cessna ______ _____ ______ Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988); La Seguridad v. ____________ ____________ Transytur Line, 707 F.2d 1304, 1308-10 (11th Cir. 1983). On _______________ remand, the district court received further evidence, including detailed supplemental affidavits from Sayman as well as several experts hired by the Merciers. The second district court dismissal order was conditioned on (1) acceptance of jurisdiction by the Turkish courts; (2) Sheraton's submission to Turkish jurisdiction; (3) Sheraton's waiver of any statute of limitations defense, and acceptance of the waiver by the Turkish court; and (4) Sheraton's agreement to satisfy any Turkish court judgment. III III DISCUSSION DISCUSSION __________ The doctrine of forum non conveniens permits 7 discretionary dismissals on a "case by case" basis, Royal Bed & ____________ Spring Co. v. Famossul Industria E Comercio de Moveis Ltda., 906 ___________ _____________________________________________ F.2d 45, 47 (1st Cir. 1990), where an alternative forum is available in another nation which is fair to the parties and substantially more convenient for them or the courts. Howe v. ____ Goldcorp Invest., Ltd., 946 F.2d 944, 947 (1st Cir. 1991), cert. _______________________ _____ denied, 112 S.Ct. 1172 (1992). The application of the doctrine ______ of forum non conveniens is committed to the sound discretion of the trial court, Piper Aircraft, 454 U.S. at 257, whose decision ______________ will not be reversed absent a "clear abuse of discretion." Id.; ___ see also Howe, 946 F.2d at 951; Royal Bed & Spring Co., 906 F.2d ___ ____ ____ ______________________ at 47-48. But since there is a strong presumption in favor of the plaintiff's forum choice, id. at 241, the defendant must bear ___ the burden of proving both the availability of an adequate ____ alternative forum, see Tramp Oil & Marine, Ltd. v. M/V Mermaid I, ___ ________________________ _____________ 743 F.2d 48, 50 (1st Cir. 1984), and the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum, Koster v. Lumbermen's Mut. Cas. Co., 330 U.S. ______ __________________________ 518, 524 (1947); Howe, 946 F.2d at 950 (citing Piper Aircraft, ____ ______________ 454 U.S. at 259). A. Forum Availability A. Forum Availability __________________ As we noted in Mercier II, an alternative forum ___________ generally will be considered "available" provided the defendant who asserts forum non conveniens is amenable to process in the alternative forum. 935 F.2d at 424 (citing Gulf Oil, 330 U.S. at ________ 8 506-07); see also Piper Aircraft, 454 U.S. at 254 n.22. There ___ ____ _______________ seems to be no question that Sheraton is amenable to process in the Republic of Turkey. Not only does Sheraton conduct substantial business in Turkey (i.e., operation of the Istanbul ____ Sheraton Hotel), but any contracts at issue in the present action were made in Turkey and were to be performed there. See Turk. ___ Code Civ. Proc. Art. 10 (Turkish courts competent to hear disputes over contracts made or to be performed in Turkey); Art. 21 (Turkish courts exercise jurisdiction over torts committed within Turkey). Moreover, the 1984 Protocol expressly designates Istanbul, Turkey, as a valid locus for the litigation of disputes arising among these parties, and forum selection provisions have been recognized as a valid basis for jurisdiction under Turkish law. See generally T. Ansay, American-Turkish Private Interna- ___ _________ _________________________________ tional Law 61 (Parker School of Foreign and Comparative Law, __________ Columbia University, Bilateral Studies in Private International Law, No. 16) (1966) ["Columbia Study"]. Finally, the dismissal ______________ of the complaint was expressly conditioned on Sheraton's submis- sion to the jurisdiction of the Turkish courts and on the Turkish courts' exercise of that jurisdiction. We therefore conclude that the Republic of Turkey is an "available" alternative forum for the present action. B. Forum Adequacy B. Forum Adequacy ______________ The adequacy of the alternative forum is a separate ________ inquiry. See Piper Aircraft, 454 U.S. at 254 n.22; In re Air ___ _______________ _________ 9 Crash Disaster, 821 F.2d at 1165. An alternative forum may be ______________ inadequate even though the defendant is amenable to process, Mercier II, 935 F.2d at 424, if "the remedy provided by the __________ alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," Piper Aircraft, 454 U.S. at 254; Howe, ______________ ____ 946 F.2d at 952. For example, an alternative forum is inadequate if it "does not permit litigation of the subject matter of the dispute," id. at 254 n.22; Industrial Dev. Corp. v. Mitsui & Co., ___ _____________________ ____________ 671 F.2d 876, 891 (5th Cir. 1982), vacated and remanded on other _______ ___ ________ __ _____ grounds, 460 U.S. 1007 (1983); or the plaintiff demonstrates _______ significant legal or political obstacles to conducting the litigation in the alternative forum, see Menendez Rodriguez v. ___ ___________________ Pan Am Life Ins. Co., 311 F.2d 429 (5th Cir. 1962) (Castro's Cuba ____________________ unavailable to Cuban political refugees as alternative forum), vacated on other grounds, 376 U.S. 779 (1964); Rasoulzadeh v. _______ __ _____ _______ ___________ Associated Press, 574 F. Supp. 854 (S.D.N.Y. 1983) (plaintiff _________________ would be executed were he to attempt to litigate in postrevolutionary Iran), aff'd without opinion, 767 F.2d 908 (2d ______________________ Cir. 1985). Sheraton was required to establish that the Turkish courts offer an adequate alternative forum for the present action. See Tramp Oil & Marine, 743 F.2d at 50; see also Lacey ___ ___________________ ___ ____ _____ v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991); Cheng ____________________ _____ v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir.), cert. denied, 464 __________ ____ ______ U.S. 1017 (1983); Schertenleib v. Traum, 589 F.2d 1156, 1159-60 ____________ _____ (2d Cir. 1978); but see Vaz Borralho v. Keydril Co., 696 F.2d ___ ___ ____________ ___________ 10 379, 393 (5th Cir. 1983) (plaintiff bears burden of proving inadequacy of defendant's proposed alternative forum). The primary contention made by the Merciers in Mercier II was that ___________ Sheraton had not shown that the Turkish forum was adequate in light of the legal difficulties (risk of arrest) Susan Mercier would encounter were she to return to Turkey to testify, 935 F.2d at 427. Although we concluded that these legal difficulties alone were not sufficient to render Turkey an inadequate alternative forum, id., on remand the district court was directed ___ to consider whether the Turkish courts would decline to receive essential affidavit or deposition testimony from Susan Mercier by reason of her fugitive status. Id. As a Turkish criminal court ___ has exonerated Susan Mercier, and vacated the arrest warrant, Director of Public Prosecutions v. Mercier, No. 1986/103 (Turkish _______________________________ _______ First Aggravated Felony Court [Kadikoy], July 7, 1988), currently there is no legal or political obstacle to the presentation of Susan Mercier's testimony in the Turkish courts.2 Similarly, we reject the contention that the Merciers would be handicapped in vindicating their rights before the Turkish courts due to a "profound bias" against Americans and ____________________ 2Although we are sensitive to any personal trepidation with which Mercier may view her return to Turkey, in light of the fact that her assailant apparently remains at large, we adhere to the misgivings expressed in Mercier II: "We . . . doubt[] that Susan __________ Mercier's personal difficulties with the Turkish system as ________ opposed to a showing of Turkish justice's systematic inadequacy can provide an appropriate basis for a finding that Turkey is an inadequate forum." 935 F.2d at 426-27 (emphasis added); cf. ___ Shields v. Mi Ryung Constr. Co., 508 F. Supp. 891, 895 (S.D.N.Y. _______ ____________________ 1981) (alternative (Saudi) forum adequate notwithstanding plain- tiff's asserted fears for personal safety). 11 foreign women. We noted in Mercier II that the Merciers had ___________ provided no record basis "for us to suspect, much less take judicial notice of, an American woman's patent inability to secure basic justice in the Turkish courts." 935 F.2d at 427. As their offer of proof remained inadequate on remand, it was rightly disregarded by the district court.3 Moreover, it is not unfair that a plaintiff's conclusory claims of social injustice in the foreign nation where she deliberately chose to live, work, and transact the business out of which the litigation arises should be accorded less than controlling weight in the selection of a judicial forum for the related litigation. See Mizokami ___ ________ Bros. of Arizona, Inc. v. Bay-Chem Corp., 556 F.2d 975, 978 (9th ______________________ ______________ Cir. 1977), cert. denied, 434 U.S. 1035 (1978); Shields, 508 F. _____ ______ _______ Supp. at 894 n.4; cf. Cuba R. Co. v. Crosby, 222 U.S. 473, 480 ___ ___________ ______ (1912) (Holmes, J.) (upholding application of foreign law to plaintiff's tort claim; "it should be remembered that parties do ____________________ 3On remand, the Merciers presented the affidavit of an American professor, relating her impressions of the Turkish legal system and recounting her personal teaching experiences in the Republic of Turkey during the periods 1965-1966 and 1980-1982. The district court did not abuse its discretion in ruling the affidavit irrelevant to the issues in the present case. The affiant described her experiences with the Turkish educational system, not its legal system. The experiences occurred as many as 25 years ago, and most recently a decade ago while Turkey was governed by a military regime. Most importantly, the affidavit addresses the social, not the legal, status of women in Turkey. _____ With respect to the latter point, we would note that Susan Mercier's vindication in absentia by the Turkish criminal court, __ ________ following her dispute with a Turkish male assailant, see Director ___ ________ of Public Prosecutions v. Mercier, supra, would at least tend to _______________________ _______ _____ undercut her conclusory assertion that "injustice [is] prevalent in the Turkish legal system when a foreigner (especially a woman) opposes a Turkish man." Mercier II, 935 F.2d at 427. __________ 12 not enter into civil relations in foreign jurisdictions in reliance upon our courts. They could not complain if our courts refused to meddle in their affairs and remitted them to the place that established and would enforce their rights."). In a more substantive vein, our remand in Mercier II __________ required the district court to reconsider whether the Mercier claims for breach of contract and tortious interference with contractual relations would be cognizable under Turkish law.4 On remand, Dr. Sayman submitted a more comprehensive affidavit, setting forth Turkish law. We have reviewed the new Sayman affidavit, and the Turkish Code of Obligations on which it is based. Insofar as we have been able to determine, the affidavit appears to relate an accurate and complete statement of the relevant governing law.5 The district court did not "clearly" ____________________ 4The initial Sayman affidavit was found inadequate to estab- lish Turkey as an adequate alternative forum. 935 F.2d at 425-26 (citing Lacey, 862 F.2d at 43-44). The initial affidavit stated: _____ The courts of Istanbul are competent to hear the claims stated in the complaint filed by the Merciers in the above-captioned proceeding. In such a civil proceeding before our courts the litigants are guaranteed the same sort of procedural safeguards I understand they enjoy in the United States. They are entitled to be heard, to present evidence, and to cross-examine their opponents' witnesses. The judgment of the trial court is subject to review by an appellate tribunal. . . . Our constitution grants standing to foreign nationals, such as the Merciers, to prosecute such commercial claims in our courts. 5Sayman's affidavit represents that an action for breach of contract would be recognized under Articles 96-108 of the Turkish Code of Obligations, and that an action for tortious interference with contractual relations could be recognized under the Code's Article 41 (requiring indemnity by "one who knowingly causes damage to another, as a result of an immoral action"). Sayman 13 abuse its discretion in accepting the Sayman affidavit as a correct statement of Turkish law. See, e.g., Lockman Foundation ___ ____ __________________ v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. _____________________________ 1991) (citing Cheng, 708 F.2d at 1410-11) (moving party may _____ demonstrate adequacy of alternative forum's law through affidavits and declarations of experts); accord, Zipfel v. ______ ______ Halliburton Co., 832 F.2d 1477 (9th Cir. 1987), cert. denied, 486 _______________ _____ ______ U.S. 1054 (1988). For the most part, the remaining objections to the adequacy of the Turkish forum were satisfactorily addressed by ____________________ also indicated that the statute of limitations in contract actions is ten years, and that Turkish courts would accept a waiver of the one-year statute of limitations for tort actions. The Merciers responded with a lengthy affidavit from their own expert, A. Nusret Haker, apparently admitting the availability of an action for breach of contract under Turkish law, but challenging Sayman's assertion that the Merciers' claim for tortious interference with contractual relations could be heard under Article 41. According to Haker, Article 41 defines a "catch-all type of tort provision" which applies principally to non-contractual obligations, and does not "perfect[ly] fit" the claim for tortious interference with contractual relations. Haker Affidavit at 6(b). Haker conceded that a Turkish court might utilize Article 41 to facilitate a tort claim under Article 98/II (stating that "liability provisions of tortious acts are also applicable, by reference, to actions constituting breach of contract"), but considered this "highly unlikely." Id. Sayman ___ submitted a detailed affidavit in response, criticizing Haker's challenge to Sayman's analysis of Article 41. The district court concluded that "the Sayman affidavit [was] more comprehensive, more reliable, based on more current information and based on more familiarity and more experience with the system than Mr. Haker's." We agree. However, even if Haker's affidavit were to be fully credited, we think it would not amount to a showing that "the remedy provided by the alternative forum [Turkey] is so clearly inadequate or __ _______ __________ __ unsatisfactory that it is no remedy at all." Piper Aircraft, 454 ______________ ____ __ __ __ ______ __ ___ ______________ U.S. at 254 (emphasis added); see also Evangelical Alliance ___ ____ _____________________ Mission, 930 F.2d at 768-69. _______ 14 the conditions imposed in the order of dismissal.6 Cf. Piper ___ _____ Aircraft, 454 U.S. at 257 n.25; Ahmed v. Boeing Co., 720 F.2d ________ _____ __________ 224, 225 (1st Cir. 1983) (conditional dismissal sufficient to cure alleged inadequacies in alternative available forum). Although the Merciers contend that the district court should have conditioned dismissal on Sheraton's provision of document translations, see Dahl v. United Technologies Corp., 632 F.2d ___ ____ __________________________ 1027, 1031 (3d Cir. 1980), we do not agree. Unlike the situation in Dahl, where the injured plaintiffs had no control over the ____ place where the instrument of their injury was manufactured or designed, in the present case the Merciers intentionally bound themselves to a contract requiring performance in Turkey, thereby plainly assuming the obvious risk that document translations might be necessary in any future contract dispute. We are unable to accept two additional proposals made by the Merciers, which contemplate, in effect, that Turkish procedure be brought more in line with the procedures utilized in American courts, as a condition of dismissal. The first proposal an amorphous request that Sheraton be required to "facilitate ____________________ 6For example, the district court conditioned dismissal on Sheraton's affirmative waiver of all statute of limitations defenses: The defendant shall not assert any defense based upon any statute of limitations but shall affirmatively waive any such defense . . . provided that the Courts of the Republic of Turkey shall give full force and effect to such waiver. Sheraton asserts no claim that the waiver requirement is overbroad. 15 discovery" in the foreign forum was not raised below, either before or after remand, and must be rejected here. See Kale v. ___ ____ Combined Ins. Co., 861 F.2d 746, 755 (1st Cir. 1987); J & S __________________ ______ Constr. Co. v. Traveler's Indemn. Co., 520 F.2d 809, 809 (1st ___________ _______________________ Cir. 1975). Turkish courts have their own procedures for compel- ling discovery. See, e.g., Article 258/I of the Turkish Code of ___ ____ Obligations (compulsory process available to enforce attendance of witnesses). The case law is clear that an alternative forum ordinarily is not considered "inadequate" merely because its courts afford different or less generous discovery procedures than are available under American rules. See Evangelical ___ ___________ Alliance Mission, 930 F.2d at 768 (Japanese forum held adequate _________________ although discovery procedures were "not identical to those in the United States"); Zipfel, 820 F.2d at 1484 (Singapore forum held ______ adequate available forum although depositions were allowed only in certain circumstances); In re Union Carbide Gas Plant ___________________________________ Disaster, 809 F.2d 195, 205 (2d Cir.), cert. denied, 484 U.S. 871 ________ ____ ______ (1987) (Indian forum held adequate although Indian discovery rules were more limited than United States rules; Indian courts could voluntarily accept American rules, but this would not determine propriety of dismissal by American court); see ___ generally Howe, 946 F.2d at 946 ("small differences in standards _________ ____ and procedural difficulties . . . are beside the point"). The second proposed condition, requiring Sheraton to waive the "cost bond" commonly imposed on foreign litigants in Turkish courts, presents a somewhat closer question. It has been 16 noted that an action should not be dismissed on forum non con- veniens grounds without first considering "the realities of the plaintiff's position, financial or otherwise, and his or her ability as a practical matter to bring suit in the alternative forum." Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339 (8th Cir. ______ ______________________ 1983), cert. denied, 464 U.S. 1064 (vacating transfer to Cayman ____ ______ Islands, based in part on indigent plaintiff's inability to post "cost bond"); see also Macedo v. Boeing Co., 693 F.2d 683, 688, ___ ____ ______ __________ 690 (7th Cir. 1982) ("cost bond" requirement may be given weight in forum balancing process); but see Nai-Chao v. Boeing Co., 555 ___ ___ ________ __________ F. Supp. 9, 16 (N.D. Cal. 1982), aff'd, 708 F.2d 1406 (9th Cir.), _____ cert. denied, 464 U.S. 1017 (1983) ("filing fee" amounting to 1% ____ ______ of recovery sought held not relevant to adequacy of foreign forum). On the other hand, we perceive no abuse of discretion in the district court ruling that the burden presented by the "cost bond" requirement did not rise to a level which would render the Turkish forum "so clearly inadequate or unsatisfactory that [it effectively offered] no remedy at all." Piper Aircraft, 454 U.S. ______________ at 254. The Merciers are not indigent, nor can the Turkish bond requirement, though substantial, be considered excessive in the circumstances.7 Its function is to cover court costs and to ____________________ 7According to the parties' experts, typically the plaintiff's bond is set by the Turkish courts at 15% of the recovery sought, and is a recoverable cost in the event the plaintiff prevails. Sheraton's expert, Dr. Sayman, suggests that a Turkish court might waive the bond requirement, or reduce it to as little as 3% of the monetary recovery sought. 17 ensure the eventual recovery of any damages awarded against the plaintiff. It therefore safeguards the harmonious operation of Turkish procedural rules, such as the "cost-shifting" rule requiring a losing litigant to pay the legal fees and costs of the winner. Although such broad-scale "cost-shifting" is not in tune with the "American rule," the disparity provides an insufficient basis for finding that the district court abused its discretion. Cf. id. (holding that unfavorable change in forum ___ ___ law is insufficient to preclude forum non conveniens dismissal). By the same token, the Merciers reasonably sought to condition the dismissal order on assurances by Sheraton that witnesses and evidence be made available in Turkey. Sheraton's corporate headquarters is in Massachusetts. It seems to us reasonable that the Merciers' choice of the Massachusetts forum was prompted at least in part by their interest in compelling production of Sheraton records and subpoenaing Sheraton witnesses. In these circumstances, we believe it appropriate to condition the order of dismissal on the availability, in the Turkish forum, of witnesses and evidence within Sheraton's control in Massachusetts. See Piper Aircraft, 454 U.S. at 257 ___ ______________ n.25; Vaz Borralho, 696 F.2d at 394 (remanding with direction to ____________ impose further condition on dismissal requiring defendants' agreement to make all necessary witnesses and documents available in alternative forum); see also DeMelo v. Lederle Labs., Inc., ___ ____ ______ ____________________ 801 F.2d 1058, 1063 (8th Cir. 1986) (upholding conditional dismissal from original forum where corporate defendant's 18 principal place of business was located on defendant's agreement to make documents and witnesses available in alternative available forum); Watson v. Merrell Dow Pharmaceuti- ______ ________________________ cals, Inc., 769 F.2d 354, 356 (6th Cir. 1985) (same). __________ C. Forum Convenience C. Forum Convenience _________________ The availability of an adequate alternative forum is but the first step in the forum non conveniens analysis. The more complicated inquiry is whether the alternative forum is sufficiently more convenient for the parties as to make transfer necessary to avoid serious unfairness. Howe, 946 F.2d at 950 ____ (citing Piper Aircraft, 454 U.S. at 259). ______________ Well-established "public interest" and "private interest" criteria guide the trial court determination as to the relative convenience of an alternative forum. See Gulf Oil v. ___ ________ Gilbert, 330 U.S. at 508-09. The "private interest" criteria _______ include the comparative convenience of the parties' access to sources of proof; the availability of compulsory process and the cost of securing the attendance of witnesses; the possibility of a view of the premises, if a view would be appropriate; and an evaluation of "all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. at 508. The ___ "public interest" criteria include the administrative difficulties resulting from court congestion in the plaintiff's chosen forum; the "local interest in having localized controversies decided at home"; the interest in having the trial 19 of a case conducted in a forum that is at home with the governing law; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of imposing jury duty on citizens in an unrelated forum. Piper _____ Aircraft, 454 U.S. at 241 n.6. ________ In weighing these considerations, the trial court must favor the plaintiff's choice of forum: "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil, 330 U.S. at 509. ________ The deference accorded the plaintiff's choice of forum is enhanced when the plaintiff has chosen a forum in which the defendant maintains a substantial presence, see Schertenleib, 589 ___ ____________ F.2d at 1164; see also Lony v. E.I. Du Pont de Nemours & Co., 935 ___ ____ ____ _____________________________ F.2d 604, 608 (3d Cir. 1991); Mutual Export Corp. v. Westpac ____________________ _______ Banking Corp., 742 F. Supp. 161, 163 (S.D.N.Y. 1990), and when ______________ the plaintiff is an American citizen who has selected an available American forum, Piper Aircraft, 454 U.S. at 256 n.23; ______________ see also Hoffman v. Goberman, 420 F.2d 423 (3d Cir. 1970); Mobil ___ ____ _______ ________ _____ Tankers Co. v. Mene Grande Oil Co., 363 F.2d 611, 614 (3d Cir. ___________ ____________________ 1965), cert. denied, 385 U.S. 945 (1966). ____ ______ Yet no absolute deference is due an American plaintiff's selection of an available American forum in an action against an American defendant. See Piper Air, 454 U.S. at 255 ___ __________ n.23. Forum non conveniens is a "flexible, practical" doctrine, Howe, 946 F.2d at 950, not subject to ritualistic application; ____ and "[a]lthough 'a defendant must meet an almost impossible 20 burden in order to deny a citizen access to the courts of this country,' the cases demonstrate that defendants frequently rise to the challenge." Contact Lumber Co. v. P.T. Moges Shipping __________________ ____________________ Co., 918 F.2d 1446, 1449 (9th Cir. 1990) (quoting Mizokami Bros. ___ ______________ of Arizona, Inc. v. Bay-Chem Corp., 556 F.2d 975, 977 (9th Cir. ________________ ______________ 1977)); Evangelical Alliance Mission, 930 F.2d at 767; Alcoa S/S _____________________________ _________ Co. v. M/V Nordic Regent, 654 F.2d 147, 152 (2d Cir.) (en banc), ___ _________________ cert. denied, 449 U.S. 890 (1980). Moreover, as we have noted, a _____ ______ trial court's determination to transfer a case to an available foreign forum is reviewable only for a clear abuse of its discretion. The Merciers assert that the district court abused its discretion by (1) improperly minimizing the importance of their interest in an American forum; (2) continuing to treat the insubstantial connections between the Commonwealth of Massachusetts and the present dispute as a relevant factor in its forum inquiry; (3) assigning excessive weight to its inability to compel the testimony of Deliveli, a Turkish national; (4) assigning insufficient weight to the litigation activity already conducted on the merits in the American forum; (5) exaggerating the difficulties in applying Turkish law; (6) overstressing the docket congestion in the forum court; and (7) overemphasizing the importance of the forum selection clause in the 1984 Protocol. 1. American Plaintiffs' Interest in American Forum 1. American Plaintiffs' Interest in American Forum _______________________________________________ The district court expressly noted that the Merciers 21 are American citizens, and acknowledged that the court "would like to resolve [this] matter between America[n] citizens." Thus, the district court was cognizant of the strong presumption favoring the American forum selected by American plaintiffs. Moreover, the district court's extended discussion of the factors militating in favor of a transfer indicate that the court was fully aware of the considerable quantum of evidence required to overcome the presumption. See, e.g., Gulf Oil, 330 U.S. at 509. ___ ____ ________ We are satisfied that the district court neither failed to consider the Merciers' American citizenship nor assigned their choice of an American forum perfunctory weight. See Mercier II, ___ __________ 935 F.2d at 423. 2. Connection Between the Dispute and the Massachusetts Forum 2. Connection Between the Dispute and the Massachusetts Forum __________________________________________________________ After noting the presumption of forum adequacy which arises as a result of the American citizenship of the parties, the district court intimated that the attenuated connection between the parties' dispute and the Massachusetts forum militated in favor of dismissal. See District Court Opinion at ___ 24 ("Except for the fact that Susan Mercier and George Mercier are American citizens, . . . this is not a local controversy."). The Merciers argue that the district court disregarded our admonition in Mercier II, that "the Merciers' United States __________ ______ ______ citizenship and residence plus Sheraton International's similar citizenship and residence . . . make this a controversy local to the United States, if not necessarily to 22 Massachusetts." 935 F.2d at 429 (emphasis in original). We think that the Merciers misapprehend Mercier II. __________ Contrary to their understanding, Mercier II did not __________ state that a district court could not recognize, as a factor to be considered in its forum non conveniens analysis, the attenuated connection between the matter in litigation and the particular forum selected within the United States. Rather, we pointed out that the connection between the matter in litigation and the particular forum within the United States may not wholly __________ _____ supplant the dominant transnational comparison required where ________ "the choice facing the district court [is] between two countries." Id. at 429-30 (emphasis in original). Provided _________ ___ adequate recognition is accorded "the substantial public interest in providing a convenient United States forum for an action in which all parties are United States citizens and residents," id. ___ at 430, the trial court may weigh, as a subsidiary consideration, any attenuated connection between the particular United States forum and the matter in litigation. See, e.g., De Melo, 801 F.2d ___ ____ _______ at 1063; Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1336 (9th ___________________ ______ Cir. 1984), cert. denied, 471 U.S. 1066 (1985); see generally ____ ______ ___ _________ Pain v. United Technologies Corp., 637 F.2d 775, 792 (D.C. Cir. ____ __________________________ 1980), cert. denied, 454 U.S. 1128 (1981) ("courts may validly ____ ______ protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; [and] may legitimately encourage trial of controversies in the ___ localities in which they arise") (emphasis added). __________ 23 3. Witness Availability 3. Witness Availability ____________________ In the district court's view, a very important "private interest factor" pointing to dismissal was the inability of any American court to compel the testimony of Fethi Deliveli, the Merciers' Turkish partner, who played a significant role in negotiating the two written agreements underlying the Merciers' claims.8 See Dist. Ct. Opin. at 22-23. In Mercier II, we ___ __________ explicitly recognized the importance of Deliveli's availability: "While the Merciers have provided a long list of [American] witnesses who appear to have been party to one or two negotiating sessions, none appears to have been as central to the negotiations as Deliveli." 935 F.2d at 428. Moreover, it seems most likely that Deliveli's credibility would be pivotal to any judicial resolution of the factual issues at the root of the parties' dispute. Thus, the fact-finder's opportunity to evaluate Deliveli's credibility on the basis of in-person testimony could be crucial to a reliable resolution of these factual disputes. In these circumstances, deposition testimony and letters rogatory, even if available to the American court, would be less than satisfactory substitutes for in-person ____________________ 8Deliveli was a principal stockholder in Lidya, the Turkish corporation through which the Merciers initially hoped to lease space and operate the casino. On Lidya's (and the Merciers') behalf, Deliveli signed the 1984 Protocol defining the parties' prospective roles in the operation of the casino. He was also a party to the negotiations and a signatory to the earlier Memorandum of Understanding, which outlined the steps required for bringing the casino into existence. It seems likely that he may have been a necessary party to any attempts to obtain the required permits from the Turkish government. 24 testimony. See Howe, 946 F.2d at 952 ("compulsory process would ___ ____ seem to be especially important where . . . subjective intent [is an] element[] of the claim."). In its initial ruling the district court considered the unavailability of Deliveli and other Turkish witnesses to be "a problem in theory only," as "there [was] no evidence . . . that [Sheraton] ha[d] ever asked these witnesses to provide evidence, let alone that they ha[d] . . . refused to do so." Mercier I, _________ 744 F. Supp. at 385. On remand, however, the district court concluded that Deliveli's unavailability as a witness threatened "serious unfairness" at any American trial. See Mercier II, 935 ___ __________ F.2d at 950. The significance of Deliveli's role, inter alia, in _____ ____ negotiating and drafting the agreements confutes the Merciers' contention that Sheraton was required to demonstrate the content of Deliveli's testimony or his unavailability absent compulsory process. As other courts have recognized, there is no "blanket rule" that a defendant affirmatively demonstrate, by affidavit, the unavailability of a foreign witness and the significance of the witness's testimony. See Empresa Lineas Maritimas Argentinas ___ ___________________________________ v. Schichau-Unterweser, A.G., 955 F.2d 368, 372 (5th Cir. 1992) _________________________ (citing Baris, 932 F.2d at 1550); a blanket rule "would tend to _____ inflict an impossible burden on defendants who are seeking dismissal for the very reason that they cannot compel evidence, including the evidence necessary to argue for dismissal." Empresa Lineas, 955 F.2d at 372 (citing Piper Aircraft, 454 U.S. _______________ ______________ at 258). Under the terms of the remand order in Mercier II, 935 __________ 25 F.2d at 430 requiring that the factors militating for and against dismissal be rebalanced there was no clear abuse of discretion in the district court's finding that the unavail- ability of Deliveli's testimony would result in "serious injustice" in the event the case were tried in the District of Massachusetts. 4. Litigation Activity in Chosen Forum 4. Litigation Activity in Chosen Forum ___________________________________ As a basis for their contention that "the presumption against dismissal on the grounds of forum non conveniens [has been] greatly increase[d]," Lony, 935 F.2d at 614, the Merciers ____ point to litigation activity relating to the merits, id. See ___ ___ also Gates Learjet, 743 F.2d at 1335 (citing, as a relevant ____ ______________ "private interest factor," that "parties were ready for trial _____ ___ _____ when [the court] dismissed the complaint for forum non conveniens") (emphasis added); but see Empresa Lineas, 955 F.2d ___ ___ ______________ at 372 (rejecting argument that district court acted unreasonably in dismissing case filed eight years before, in which third-party claim by moving plaintiff was filed two years earlier). However, the only "substantial merits discovery" identified by appellants (except for that incident to the dismissal motion itself) consisted of the Susan and George Mercier depositions taken by Sheraton in April and May 1990. For present purposes, we would observe that the merits activity in this case simply never approached the level which was held to preclude dismissal in Lony or to weigh against dismissal ____ 26 in Gates. The forum non conveniens dismissals in those cases _____ were not sought until several years after the defendants filed their answers and the dismissal motions were based on "allegedly new facts uncovered in discovery." 935 F.2d at 614.9 Moreover, we think the "merits activity" in Lony substantially affected the ____ very factors of relative convenience, such as "access to sources of proof" and "attendance of witnesses," which the Supreme Court has identified as crucial to the forum non conveniens inquiry. Gilbert, 330 U.S. at 508. In our view, these factors alter the _______ balance in favor of dismissal in the present case. 5. Difficulties with Turkish Law 5. Difficulties with Turkish Law _____________________________ The district court also adverted to the difficulty of applying Turkish law.10 As appellants note, this factor is not ____________________ 9The activity which had taken place to that point in Lony ____ included not only limited discovery on a prior, unsuccessful forum non conveniens motion, but also six months of continuous discovery on the merits; document production amounting to several thousand pages; substantial exchanges of interrogatories; trans- lation of documents from German into English; and the depositions of at least five witnesses, including one from overseas. Lony, ____ 935 F.2d at 613. Furthermore, the trial court in Lony had ____ achieved a high degree of familiarity with the litigation. 10Although applicable Turkish law is patterned on familiar European models, notably the Swiss Code of Obligations, and has been translated into English, see Swiss Federal Code of ___ _________________________ Obligations with Turkish Alterations (G. Wettstein ed. 1928), it ____________________________________ is still subject to Western judges' general lack of familiarity with civil law principles. Moreover, practical difficulties are likely to be encountered in applying Turkish law to a dispute in American courts by reason of the fact that many treatises on Turkish law are unavailable in English translation, see O. ___ Oehring, Bibliographie zum turkischen Recht and den ______________________________________________________ internationalen Beziehungen der Turkischen Republik (1982), T. _____________________________________________________ Ansay, "Law of Obligations," in Introduction to Turkish Law, (T. __ ___________________________ Ansay & D. Wallace eds.; 3d ed. 1987), and that almost no Turkish 27 "dispositive." See Piper Aircraft, 454 U.S. at 260 n.29. ___ _______________ Rather, "the task of deciding foreign law [is] a chore federal courts must often perform," Manu Int'l, S.A. v. Avon Products, _________________ ______________ Inc., 641 F.2d 62, 68 (2d Cir. 1981), and the difficulties ____ associated with the application of foreign law should not be ascribed "undue importance." We do not think the district court assigned dispositive weight to the problem of applying foreign law, but cited it as one of several factors "counseling dismissal." Mercier II, 935 F.2d at 428. See also Piper __________ ___ ____ _____ Aircraft, 454 U.S. at 260; cf. Traveler's Indem. Co. v. S/S Alca, ________ ___ _____________________ ________ 710 F. Supp. 497, 501-02 (S.D.N.Y.), aff'd without opinion, 895 _____ _______ _______ F.2d 1410 (2d Cir. 1989) (difficulty of applying Turkish law cited as partial basis for dismissal). 6. Docket Congestion 6. Docket Congestion _________________ The district court found that Turkish civil courts are significantly less congested than the civil docket of the United States District Court for the District of Massachusetts, and that the public and private interests in obtaining an expeditious resolution of the parties' dispute therefore favored a Turkish ____________________ court decisions are available in English translation, id. ___ Although Turkish court decisions are not binding to the same extent as American court decisions, "much attention is paid to them by Turkish writers," and "the lower courts give consideration to the previous decisions of the Supreme Court [Yargitay]." Columbia Study, at 12. ______________ 28 forum. The district court relied on caseload statistical reports11 and on the Sayman affidavit, which attests that a lawsuit of this nature could be heard by the Turkish Court of Commerce in approximately eighteen months, excluding any appeal.12 We conclude that the district court's comparative analysis on remand met the mandate in Mercier II, 935 F.2d at ___________ 428-29, directing "a comparative determination of where the case ___________ can most quickly be resolved, rather than simply rely[ing] on the state of [the district court's] own docket" (emphasis added); see ___ also Gates Learjet, 743 F.2d at 1337 ("real issue is not whether ____ _____________ a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket"). 7. Forum Selection Clause 7. Forum Selection Clause ______________________ The Protocol signed in 1984 by Sheraton and Deliveli (on behalf of Lidya, in which the Merciers held an important interest) contained a forum selection clause, providing that "the ____________________ 11The Federal Court Management Statistics submitted by Sheraton showed that as of June 30, 1990, 30.8% of civil cases in the District of Massachusetts had been pending for more than three years, by far the highest in the First Circuit, and approximately 300% higher than the national district court average of 10.4%. Moreover, the district court pointed out that diversity cases typically are placed on the slowest track. Priority is given to criminal cases under the Speedy Trial Act and to civil cases invoking federal question jurisdiction. 12The Merciers' expert challenged Sayman's representations, asserting that this case would take approximately three years to be "fully tried" in Turkey. Haker Affidavit, at A-230. As noted, however, the district court supportably declined to credit Haker's affidavit. See supra note 5 and accompanying text. ___ _____ 29 agreement will be governed by Turkish laws and the jurisdiction will [sic] Istanbul, Turkey."13 A mutual forum selection clause is a factor to be considered in the forum non conveniens analysis. Royal Bed & Spring, 906 F.2d at 51, 52. __________________ The Merciers protest that the district court assigned excessive weight to the forum selection clause. We disagree. Although their signatures do not appear on the document, the Protocol was signed in behalf of the Merciers and Lidya by Deliveli, and pertained to the same business transaction which is at issue in the present action. Notwithstanding its apparent typographical omission, the clause is most naturally read to indicate the parties' choice of Istanbul, Turkey, as the forum for litigating whatever disputes might arise out of their business relationship. Indeed, the Merciers' lawsuit is predicated in part on the validity of the Protocol containing the forum selection clause. Moreover, the fact that Sheraton asserts that the Merciers breached the substantive terms of the Protocol does not alter the appropriateness of honoring the parties' choice of an adequate and available forum for resolving their substantive dispute. ____________________ 13Forum selection clauses have long been utilized in commer- cial transactions between citizens of the United States and Turkey. See, e.g., S/S Alca, 713 F. Supp. at 131-132 (S.D.N.Y. ___ ____ _________ 1989); Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu, 660 F. ______________ ________________________________ Supp. 1538 (S.D. Tex. 1987) (forum selection clause naming Turkey); Konstantinidis v. S/S Tarsus, 248 F. Supp. 280, 281 ______________ ___________ (S.D.N.Y.), aff'd, 354 F.2d 240 (2d Cir. 1965) (arbitration _____ clause designating Turkish forum and prescribing application of Turkish law). 30 III III CONCLUSION CONCLUSION __________ For the foregoing reasons, the district court order of dismissal is modified to include the following condition: Sheraton, its subsidiaries and affiliates, shall make available in the Republic of Turkey all evidence within their control, including testimony of their officers and employees, at least to the extent that such evidence would have been available to plaintiffs in the district court proceedings in the District of Massachusetts. The order of dismissal, as modified, is affirmed. So __________________________________________________ __ ordered. _______ 31